Good morning. May it please the court. My name is Miriam Heiser, and I am representing the appellant Double Bogey LP. Double Bogey proved a prima facie case of defalcation by a fiduciary against Paul and Sylvester Enea under Section 523A4 of the Bankruptcy Code. The trial court erred when it granted the Enea's motion for judgment pursuant to Rule case remanded to the trial court. What Double Bogey proved at trial was the following. Double Bogey and Appian were fiduciaries for the purposes of Section 523A4 by way of both the Montarosa Agreement and the Monticello Agreement. Double Bogey and the trial court found that Double Bogey was the limited partner in the Monticello Agreement and a member of Montarosa. Appian was the general partner in Monticello and the managing member of Montarosa. So Appian had a fiduciary duty to Double Bogey under California law as the general partner and as the managing member. And under 523A4, Your Honor, yes. But my problem with your argument is that the Enea's can be fiduciaries by stepping into the shoes of Appian only if the two prongs for finding piercing of the corporate veil are applicable. And in your brief, you focus on the first prong, which is the unity of interest and ownership. But the second prong, in order to pierce the corporate veil or a diamond in other cases, there must be an inequitable result if the acts in question are treated as those of the corporation alone. So I thought the acts in question here that create an inequitable result is the theory that Appian was sweeping all the money out of the Montarosa and Monticello accounts and not paying Double Bogey what it's entitled to under its agreements. But that's the very issue that is the wrongdoing that creates the fiduciary relationship. Well, Your Honor, whether or not the Enea's were the alter ego of Double Bogey, I mean, Appian was not – it was found by the trial court, and it's not an issue on appeal. The only – Right. But the question is the timing, right, is whether it's the bad act, which was the sweeping of the money, is what allowed the court to pierce the corporate veil. Right. And what the trial court referred to, we can't have – we didn't have a full listing of all the acts that he said created the alter ego status. But the ones he did reference were that they were confused or nonexistent records, no shares issued, minimal corporate formalities. But that's the first prong, right? That's the unity of interest in action. That shows that they didn't observe the corporate formalities. But under California law, there's a second prong. It has to be inequitable. There has to be some bad act that would make it inequitable not to pierce the corporate veil and make the individual shareholders liable or officer. Yes, Your Honor. There are multiple of those types of events. There were times when But what's the bad act that makes it inequitable? Simply not observing corporate formalities isn't an inequitable act. You're just sloppy. No, Your Honor. There were cases where – we cite in our briefs where Polanyi in particular took money from the corporation to pay his own income taxes. We've gone through those and reviewed those. But isn't that the act that you're saying entitles you to a ruling under 523A4? Isn't that why the fiduciary duty arises? No, Your Honor. The fiduciary duty arises. The bad act that under the ex-maleficio doctrine keeps a court from being able to impose 523A4 liability is where the – as you're getting at, the very wrongdoing that creates the debt is the same wrongdoing that creates – makes the person who took a particular piece of money or some sort of money a trustee over the funds. So what's the debt in this case? The debt is the money that was not accounted for. That occurred – the defalcation that we are – that double bogey sued on is the defalcation – the failure to account in 2007 and 2008. So it's the failure to account or is it the failure to give money? At the time of trial under Blyler v. Himmeter, both the failure to account and the failure to pay over monies owed by a fiduciary was actionable under Section 523A4. So the debt is the failure to pay money that was owed to double bogey, correct? To double bogey. And that occurred – that debt didn't arise until the accounting was required in 2008. All of the acts that made the Aeneas the alter ego, at least to the extent they're not entirely delineated in the trial court's decision, occurred much before that. But the important thing is that they are not the same act. But Appian is liable, obviously, for – under 523A4 for that debt, the failure to pay the money that was owing in 2008. Yes. But what is it that makes it necessary to pierce the corporate veil? It's that act, right? The failure to pay that amount. No, Your Honor. It's – no, and that wasn't it. Actually, the – Why is it? Whether or not – well, whether or not the Aeneas are the alter egos of double bogey isn't at issue on the appeal. The other side didn't appeal that. The only – the only issue is whether the – the 705-2 motion was granted. So the Aeneas have not contested for the purpose – it's not – it's not an issue on appeal. But the – Right. The question is when – whether the act that allowed the court to pierce the corporate veil is the failure to pay the debt that was owed to double bogey. And that is not the act, Your Honor. Why is that not? Because otherwise, the court would have to say that, I guess the standard under double sonora is, there must be an inequitable result if the acts in question are treated as those of the corporation alone. And it seems like the acts in question, which would be treated as those of Appian alone, is Appian's failure to make the payment in 2008. Well, there are much – there are many others in the trial transcript, Your Honor. There are – as I said, the primary one that jumps out at me now is the taking the taxes from – basically taking in two different instances in 2003 and 2005, taking money from one of the – from the corporate funds and paying your own personal taxes, and doing a very good job of not documenting. That is inequitable. But does that make it inequitable to pierce the corporate veil, I guess, if they had paid it back? I mean, I guess what – the thing I'm struggling with is the issue here is that Appian owed money in 2008, which it didn't pay. And the question is whether you can hold the – you can say that the Aeneas are liable for that payment, that that's not dischargeable, but it's not dischargeable if the corporate because of this failure to pay that you can pierce the corporate veil. That's not – and again, because it's not at issue here, I don't have all of the trial court – the trial court's finding. I don't know that he went through the very specific acts of what the specific inequitable result was. But as we had understood and as we argue it, the failure to pay was not the act, the final act upon which he could find the Aeneas liable as alternative status. What was the – what was the final act? Well, there was a series of acts. All he – all he – we don't have the advantage of all of the trial court's inner workings. What he – what we do have for – or the ones that I have laid out, confused or nonexistent records, no shares, minimal corporate formalities, numerous transactions, et cetera. I mean, I – Why doesn't that go to the first prong, that there must be such a unity of interest and ownership between the corporation and its equitable owner, that the separate personalities of the corporation and the shareholder do not in reality exist? It may well do, Your Honor. And it may be that he simply just didn't – I can go back and look at the trial court transcript. I don't know that he went through the other parts of the inequity. But as I said, that – whether or not they were the alter egos isn't at issue here. And what our understanding is, based on what the trial court did state, was that it was the lack of corporate formalities, et cetera, that led him to impose the alter ego liability. Well, the district court – I thought that the district court here determined that the ex-maleficio exclusion was applicable, which suggests that it determined that the – the bad acts arose at the time that the – the veil was pierced, that those are – they're coextensive. So the very acts that allow you to pierce the corporate veil arose because of this failure to pay in 2008, which made it inequitable. So how do I get out of that? Because it's a conundrum. You get out of that because the defalcation was not called out by the trial court and has not been argued by double bogey as being the part of – part and parcel of proving alter ego. The defalcation – under the Davis case, you – the ex-maleficio doctrine will bar liability when the very same act, as Your Honor just said, the very same act of defalcating also creates a trust. In the Davis case, it was the failure to – failure of a car dealer to pay his finance company, and that very same act of taking the money also made him a trust of the money that he had taken. That was the case in the Thornton and the Pedrozini cases. It's one act. So the fiduciary relationship has to arise before the bad act. The fiduciary relationship arises before the bad act. And here the fiduciary relationship is between the – under the Monticello agreement. As the alter ego of Appian, under the six different cases that we have cited, after you find the alter ego relationship, the alter ego defendant then has no separate primary liability from the corporation. The cause of action is the same. So the Aeneas step into the shoes of Appian with respect to the Monticello agreement and are liable for defalcation under that agreement. So the fiduciary relationship would have to arise before the failure to pay in 2008. And so there would have to be some reason why there would be an inequitable result if some act prior to 2008 and the failure to pay was treated as those of Appian alone. And so what happened that would have made an inequitable result if the acts and questions were treated as Appian's alone? The acts that I've referred to. So the Aeneas took money out that they shouldn't have, but what makes that inequitable as to your client? Because some of that money they funneled through Monticello. Some of those cases, and I would like to reserve a few minutes of my time for rebuttal, but a lot of that money got funneled through the Monticello partnership. Thank you, counsel. You have about three minutes. We'll hear from the Aeneas. May it please the Court, Lisa Lenher on behalf of Paul Aeneas. I just want to address a point that the opposing counsel brought up to begin with. First of all, the trial court did not find a prima facie case where defalcation was made. He found that a prima facie case for alter ego was made. And the reason why those findings were not appealed was because they didn't need to be. The trial court's ruling was made on a motion for judgment on partial findings after double bogey made their case in chief. It was a five-day case in chief and then the Aeneas moved for a motion for judgment. Are you conceding that the finding on alter ego was proper? No. I'm saying that there wasn't one made. The trial judge just said that he made a prima facie case. Specifically, he found that there were many legitimate criticisms of accounting and procedures and controls, but I don't think that careless bookkeeping carries the days. I think that careless bookkeeping or lack of some internal controls are one of many factors that would go into making a case for alter ego. He never he expected and he said on the record his opinion was a transcript. He didn't publish anything. He said on the record that he What do you take issue with from opposing counsel who seems to have a different perspective on this? Right. I think that I'm just addressing her point that she was indicating that we didn't appeal the decision that we were agreeing there was a case for alter ego. We're not. All I'm saying is that the Aeneas never presented their case on that and the judge expected there one to be. So all he said was that there was a prima facie case. He said even if there are alter egos, the 523A4 exception doesn't apply? I think what the, I mean, the issue on appeal here is a matter, as a matter of law, can the Aeneas be found liable for defalcation through alter ego analysis? And I think that the answer that the trial court found and the district court affirmed is that it cannot because any liability arising via an alter ego theory arises ex maleficio. Well, the theory that opposing counsel says is these acts, bad acts occurred all through the course of the Montrose and Monticello dealings and that the Aeneas were siphoning money improperly from Appian and sweeping them out of the accounts. And why doesn't that meet the second prong of the Sonora Diamond test? Because those findings, it was never found by the trial court that they were improperly taking money. All he said, and I'll quote again from what the trial court said, is that they used corporate funds on more than one occasion for personal expenses and didn't always document them correctly. He never found, because the Aeneas never put on their case, he never found as a matter of fact that they were improperly taking money. All he said was that double bogey proved a prima facie case. Wait. Was there evidence that corporate funds were used to pay personal income taxes? Double bogey presented evidence, yes. So why wouldn't that qualify in the category that Judge Ikuda was asking about? And that preceded the accounting. I'm not following your question. I can't understand why that wouldn't be a bad purpose. You say that there was really no evidence of alter ego. It seems to me that would be evidence of alter ego when you use corporate assets for a personal expense. I think the point that the trial judge was making was that, you know, it was a small, closely held corporation and those could have been amounts, for example, for compensation that were owed. I don't think that he made a finding that they were improperly paid. He just said that they were not always documented correctly. So there could have been an accounting mechanism if they had utilized that would have made it appropriate. So what's the answer on the alter ego question, that the record's not developed enough to make a finding one way or the other? No. I think that the issue is a matter of law. So it's not a matter of whether or not the Aeneas were the alter ego or not. The question that the bankruptcy court addressed, which probably could have been a matter of law, was whether, as a matter of law, defalcation can be found. Well, so that the Aeneas. Well, as a matter of law, a matter of California law, can alter ego status be found under the circumstances of this case? Isn't that the legal issue? Right. And I would say to that that alter ego and piercing the corporate veil is a procedural mechanism that is used to attach debt, liability for a debt to a corporate shareholder. And in this case, they're trying to transfer the fiduciary duties, which in the Munson case that was cited, it's an unreported bankruptcy case that. Well, if there is alter ego liability, doesn't that also incorporate fiduciary liability? In other words, doesn't the alter ego stand in the shoes of the corporation? No. I believe that there's always, even when a veil is pierced, when a corporate  And I can cite to you a California Supreme Court case that indicates the Messler v. Bragg. It is recognized that the alter ego doctrine cannot be used to hold an individual liable for the acts of the corporation in toto. Rather, it is under certain circumstances, a hole will be drilled in the wall of limited liability erected by the corporate forum. For all purposes other than that for which the hole was drilled, the wall still stands. And I think that's the problem we're having here because we're looking at a debt and the debt she, opposing counsel, said arose with the defalcation. And that's what you're trying to attach the corporate liability for to the Aeneas. And the only way to get that is by bad acts, which unnecessarily refer to the defalcation, which arise ex maleficio. Well, so it's sort of counterintuitive that here these individuals were intimately involved with the corporation in misusing the funds, or that's what is alleged, and in not paying out to double bogey what it was owed. And you're saying that because that's the basis for making the Aeneas liable for, or saying that we can pierce the veil between the Aeneas and Appian, that for that very reason, the defalcation, 523A4 exception to dischargeability doesn't apply. I mean, that seems sort of counterintuitive, doesn't it? I don't think so because there's other ways that you could attach liability. For example, the Baird line of cases, which was a BAP decision in the Ninth Circuit, they do allow for direct liability. And double bogey attempted to prove direct liability and ended up dropping that because they couldn't prove that the Aeneas had the control and the direct action over what was happening with the Aeneas, with the funds going back and forth. They couldn't make that case. And so there is a way that you can attach direct liability to a corporate officer without piercing the corporate veil. So I don't see how it would be an inequitable result by following the very narrow definition of fiduciary, which has been developed over 130 years of jurisprudence, just to require expressed trust. And it's very specific. And the reason for that is underlying the policy behind the bankruptcy code to give the honest but unfortunate debtor a clean start and a fresh start. And to do that, you have to really, you know, restrict the definition of a fiduciary, which has been done over the course of all of 130 years. So can you remind me why Appian can't make good on the debt it owes? Well, I don't know. So Appian couldn't discharge this debt, correct? Appian also filed a bankruptcy case, a Chapter 7 case, and is no longer in operation. And that's why they're seeking, you know, a recovery from the individuals behind Appian. Again, it was an effect of the recession, and, you know, they were building houses, large houses in California, and the real estate market tanked, and that's what happened. So, yeah, I mean, I think that they're looking for something or someone, and as you know from the record, they have also filed Chapter 7 and have been discharged of everything except for this debt that's potentially out there. Counsel, don't we have to remand at least on the Bullock issue to be sure that the district court applied the proper Bullock standard, even though it was pre-Bullock? Actually, the trial court and the district court never reached Bullock. Again, they decided this. They didn't decide that Appian was guilty of defalcation. They didn't get to that point because they said as a matter of law, because the way you're trying to reach the ANEA is through an application of alter ego, which arises ex-maleficio, you can't attach liability to them. So the Bullock standard was never reached or addressed. And I just would add, since you brought it up, that if it is remanded, I do believe that the trial court has enough evidence and testimony in the record to make additional findings because, again, they tried to prove a theory of direct liability that was abandoned, and that required them to prove that the property, and again, they didn't meet that burden, and they dropped that cause of action. But all of that testimony on behalf of Double Boogie is in the record. So they should have that. So, again, I just want to go back to talking about defalcation because I think it's so important that we put it into the context of bankruptcy and dischargeability, that defalcation includes both the misappropriation of funds, and, again, in the Ninth Circuit, whether a person is a fiduciary for the purposes of 523A4 is a question of federal law. The origins of the fiduciary capacity and the discharge exception date back to the Bankruptcy Act of 1841. And, again, from 1884 to the present, courts have construed fiduciary in the bankruptcy discharge context as including express trust but excluding trust ex-maleficio, i.e., that trust arose by operation of law upon a contract. So you have to say that the Aeneas fiduciary duty as the alter ego of Appian arose after the BAD Act, which I guess is not making the payment in 2008. Is that your position? The fiduciary duty had to rise before the BAD Act? Is that what you're asking? Well, I assume your argument is that the fiduciary duty arose after the BAD Act in order to take advantage of the ex-maleficio exception. And I think that by the very nature of an alter ego claim and an action to or a procedural mechanism to pierce the corporate veil to attach the debt, that's necessarily implied. I mean, I don't think you can disconnect the defalcation from the debt. And, again, so the wrongdoing or the potential wrongdoing that's there, the alleged wrongdoing, is necessarily attached to the defalcation. And I don't see a way to get around that. What do we do with the California cases that suggest that partners are fiduciaries, that the formation of a partnership creates fiduciary duties among the partners? I mean, that would have existed before the debt arose in 2008, right? They were a general partner on one and it sounds like a limited partner on the other. But you're still talking about Appian. So the difference is talking about, you know, whether or not Appian had a fiduciary duties owed to Double Bogey is separate from whether or not the Aeneas did. But I'm asking about is at what point did the fiduciary duties arise? You've taken the position they only arose on the default of the payment. It seems to me that California law suggests that they were fiduciaries before then. All right. I was saying that the only potential liability of the Aeneas arose on the default. Whether or not Appian had a fiduciary duty upon the formation of the entities I think is a separate question. I don't think that we need to reach back that far because what we're talking about is attaching liability to the Aeneas. And that liability had to come from the BAD Act. Okay. So, again, did the district court specifically rule on defalcation? No. I don't believe that they specifically ruled on defalcation. I think that they just followed ‑‑ I mean, there was two issues. A separate issue was whether or not there was a trust res that the bankruptcy court found there was no trust res, which was under the direct liability line of cases. We do think the question of whether or not there was a res to create an express trust in the first place is still potentially an issue. I'm just looking at the blue brief where your opponent says the double bogey proved defalcation under the then applicable Ninth Circuit law. That's their claim. And what did ‑‑ I guess my question to you is how do you interpret the record as the district court ruling on that point, if it ruled at all? I don't think it ruled at all on that point. I think that there was a finding on a prima facie case for alter ego and that they didn't need to reach whether or not Appian was liable for defalcation. But I have in my notes that even if Appian was a ‑‑ that the district court said, even if Appian was a fiduciary to double bogey and committed defalcation, you can't use alter ego doctrine to impose that on the Aeneas because it arises ex maleficio. Right. I interpret that as them not deciding, but ‑‑ Okay. So that's what ‑‑ do you agree that that's in a nutshell what the district court held? Right. I mean, I'd have to look back to see their specific language, but my memory is, yes, they said ‑‑ they basically said it didn't matter whether or not, yeah, even if they are one. And, again, I mean, to decide whether or not there's defalcation with Appian, the bankruptcy court just didn't reach that point because they found that even if it was, they wouldn't be able to attach liability. Well, they did that because they focused only on the nonpayment. They didn't focus on any of the earlier acts that your opponent alleges, right, like that payment of personal income taxes with corporate assets? Yeah. And I think that they did that because, one, they didn't have the rebuttal evidence because the Aeneas never put on their case. But, two, it wouldn't have mattered because alter ego is a procedural mechanism to attach debt to a corporation, I mean, to an individual behind a corporation, and that mechanism always has to refer back to the bad act, which was the defalcation. Thank you, counsel. Thank you. Ms. Heiser, you have some reserve time. Yes, Your Honor. It is ‑‑ Double Bogey would submit that it is undisputed that there was a prima facie case of defalcation against Appian. There was a concession of the 523A4 relationship between Double Bogey and Appian. Did you have a question, Your Honor? No, no. I'm just listening. I just want to be sure I understand your point. Yeah. There was a concession of a 523A4 relationship between Double Bogey and Appian, and under Ninth Circuit law, in the partnership context, all race that has to be accounted for is the partnership assets. And the trial court then found that Appian did not account for Double Bogey's investment in Monticello. That is a prima facie case of defalcation against Appian. Okay. But the district court never ruled with respect to the prima facie case. Well, no. He said, but he made those findings a fact, and our argument is that does establish a prima facie case against Appian for defalcation. The ‑‑ with respect to the inequitable ‑‑ what inequitable acts would also lead to the alter ego finding. I wanted to refer the Court back to our page 6 in our opening brief. Many of these ‑‑ many of these transactions here would be ‑‑ could be seen to be inequitable because they would undermine the corporation. But what about opposing counsel's statement that alter ego is a procedural method to attach debt to an individual? So it really only relates to the debt that was owed due to the 2008 failure to pay. Is that wrong? No, Your Honor. What Double Bogey's position has been is that we've proved defalcation by Appian and then that the Aeneas were Appian's alter ego. And our claim is that that is a prima facie case for defalcation by a fiduciary against the Aeneas individually. We have six different cases, the primary one being the Kurtz case out of the central district court under which liability was found against an individual debtor under almost exactly the same circumstances. It's the ‑‑ that case and the Durso case and the Talbot case. The trial court didn't have the advantage of any of those cases. But in each of those cases, the trial court found basically defalcation by a corporate fiduciary and alter ego status of an individual debtor and then liability under Section 523A4. And in none of those cases did the courts refer to the ex maleficio doctrine. The ex maleficio doctrine only applies when the very same act that creates the debt also creates a trust. Alter ego is not ever used to impose a constructive trust. It is a backward looking document. Here the act that created the defalcation was the failure to pay in 2008. The acts that made the Aeneas the alter egos occurred well before that. Thank you. Thank you, counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: O'scannlain, Ikuta, Burns